THOMAS EASTON
California State Bar #109218
LAW OFFICE OF THOMAS EASTON
967 Sunset Drive
Springfield OR 97477
Tel: 541-746-1335
Easton3535@gmail.com

Attorney for Plaintiff AM Trust

1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10

| | |
|---|---|
| **AM TRUST on behalf of itself and all others similarly situated,** | **NO.** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | |
| **UBS AG and DOES 1-20,** | |
| **Defendants.** | **DEMAND FOR JURY TRIAL** |

11
12
13
14
15
16
17
18
19
20

## CLASS ACTION COMPLAINT

Plaintiff AM Trust, individually and on behalf of all others similarly situated ("Plaintiffs"), by Plaintiffs' undersigned attorneys for Plaintiffs' complaint against UBS AG and Doe Defendants ("Defendants"), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of UBS AG and Swiss banking Ombudsman correspondence with the Estate of Adam Malik, other documents, media reports, and other publicly disclosed reports and information about the defendants.

21
22
23
24
25
26
27
28

1        **I. INTRODUCTORY STATEMENTS REGARDING COMPLAINT**

2        1.   This is a civil action arising under international law and the laws of the United

3   States of America on behalf of plaintiffs hereafter referred to as the worldwide class of

4   *SECRET BANK ACCOUNT HOLDERS,* including their estates and beneficiaries, who have

5   suffered monetary loss due the systematic, deceitful and corrupt financial practices by

6   UBS AG and its predecessors Union Bank of Switzerland and Swiss Banking Corporation

7   (SBC) which have resulted in the closure and conversion of certain bank and safekeeping

8   accounts and their seizure of plaintiffs' assets for the benefit of defendants and to the

9   detriment of *Secret Account Holders* hereafter known as *Account Holders.*

10       2.   This action is made necessary by the banking practices of UBS AG, its

11  predecessors Swiss Banking Corporation (SBC) and Union Bank of Switzerland and Doe

12  defendants, which have wrongfully deprived Account Holders of billions of dollars from

13  1984 to present by deliberating closing selected accounts without consent of the

14  beneficiaries, withholding or destroying internal records pertaining to these accounts and

15  converting the proceeds to their own use while wrongfully denying requests for

16  information and accounting.

17       3.   Specifically, UBS AG, as the successor of Union Bank of Switzerland and

18  SBC, specifically targeted accounts in which the account holders or beneficiaries who had

19  secret accounts died, were absent for prolonged periods of time or were otherwise

20  indisposed and fast tracked the closure of accounts to the detriment of the rightful

21  beneficiaries in order to convert the assets for their own use and profit rather than classify

22  the assets as current or dormant.

23       4.   In the event Account Holders, their estates, or beneficiaries eventually inquired

24  about their accounts; defendants would cite a so called "ten year rule" that no records

25  existed regarding closed accounts after 10 years had elapsed from the date of closure even

26  though in fact a diligent search could easily reveal the ultimate fate of the accounts and

27  their proceeds.

28  Complaint                                                                                                    2

1      5.   When confronted by Account Holders with evidence of the accounts' existence,

2 the defendants would admit a banking relationship had previously existed but no records

3 could be located due to passage of time including the date of alleged closure even though

4 the bank records were in defendants' possession or could be located by conducting a

5 competent search.

6      6.   UBS AG and its predecessors Union Bank of Switzerland and SBC engaged in

7 a pattern and practice of deceit, concealment, and evasion of national laws and

8 international laws including those of the United States to convert the proceeds of accounts

9 they closed with little fear of being held accountable due to the climate of banking secrecy

10 that prevailed in Switzerland, lack of documentation outside the files of the defendants and

11 the perception that Account Holders were not likely to complain due to their desire to keep

12 the existence of the accounts private.

13                   **II. JURISDICTION & VENUE**

14      7.   This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) in that the amount

15 in controversy in a class action asserted and sought to be asserted herein by a plaintiff

16 exceeds the sum of $5 million, exclusive of interest and costs and members of the class of

17 plaintiffs are citizens of a state and the defendants are all citizens or subjects of a foreign

18 state.

19      8.   This Court has supplemental jurisdiction over plaintiffs' non-federal claims

20 pursuant to 28 USC § 1367 and for any claims not otherwise covered by the

21 aforementioned jurisdictional bases and under 28 USC § 1331 as a taking in violation of

22 international law.

23      9.   This Court has personal jurisdiction over defendant UBS AG in that the named

24 defendant conducts commerce within the State of California directly through local

25 branches and financial advisors in this District and that some members of the Account

26 Holders class reside in California and this District.

27      10.   Venue is proper in this Court because the defendant is doing business in this

28

Complaint                                                         3

1   District with offices in Los Gatos, Menlo Park, Napa, Palo Alto, San Mateo, Santa Rosa,

2   San Jose and San Francisco and may be found in this District within the meaning of 28

3   USC § 1391(c) and/or, as aliens, may be sued in any district pursuant to 28 USC §

4   1391(d).

5        11.    Defendant may be found in this District and plaintiffs are unable to pursue

6   remedies in the places where the transaction occurred in that no adequate or available

7   remedies exist and that such efforts would be futile in that the transactions occurred in

8   multiple jurisdictions and named plaintiffs have a well-founded fear of retaliation

9   including false arrest in Indonesia and Switzerland.

10       12.    The plaintiff has exhausted the limited remedy offered by the Swiss Banking

11  Ombudsman Central Claims Office and UBS AG and has reason to believe because of the

12  nature of the claim that it cannot receive a fair trial in Switzerland and that his claim would

13  be rejected out of hand without remedy.

14       13.    The subject matter of this lawsuit's lead claim concerns the estate of an

15  individual: Adam Malik, who was one of the most revered founders of modern Indonesia;

16  revelations about his financial affairs and historical legacy would cause political

17  repercussions in Indonesia thus rendering a fair trial impossible and revive numerous false

18  allegations and conspiracy theories involving the former rulers of Indonesia Suharto and

19  Sukarno making a fair and impartial trial impossible. Likewise significant members of the

20  Account Holders class would be in similar albeit less spectacular circumstances in their

21  home countries.

22       14.    Because UBS AG is present in the United States and this district, United

23  States' laws apply to UBS further UBS AG has previously accepted the jurisdiction of the

24  United States District Courts regarding its worldwide banking practices and has entered

25  into a well-known settlements regarding its similar destruction and concealment of account

26  records and concealment of assets in *In re Holocaust Victims Litigation* (USDC ED NY)

27  and *United States of America v. USB* AG (USDC SD FL) worth over $1 billion dollars.

28

Complaint                                                                          4

1     15.   During the time relevant herein, UBS AG along with its predecessors Union

2  Bank of Switzerland (also known as Schweizerische Bankgesellschaft (SBG)) and Swiss

3  Banking Corporation (hereafter SBC) operated a large cross border banking business in

4  the United States with at least 20,000 US citizens and with deposits totaling at least $20

5  billion according to the US Department of Justice.

6     16.   A sub set of these 20,000 US citizens who were depositors estimated to

7  number over 1000 persons and entities make up a portion of the worldwide class who have

8  been deprived of their accounts through the actions of UBS AG complained of herein.

9                **III. PLAINTIFFS**

10     17.   Plaintiff AM Trust was established under the Bahamas Trustee Act of 1998.

11     18.   The settlor, trustees and beneficiaries of AM Trust include the heirs,

12  assignees, creditors and executors of the Estate of Adam Malik.

13     19.   The principal of the AM Trust are the assigned proceeds of the converted

14  bank accounts of Adam Malik that were opened at Union Bank of Switzerland and Swiss

15  Bank Corporation (SBC) now known as the defendant UBS AG after the two banks

16  merged in 1998.

17     20.   AM Trust represents all the Swiss bank claims of the Adam Malik Estate.

18     21.   UBS AG and the Swiss Banking Ombudsman Central Claims Office has

19  accepted that the principles of the AM Trust are the representatives of the Malik Estate.

20                **IV. DEFENDANTS**

21     22.   Defendant UBS AG is a Swiss global financial services company that is

22  headquartered in Basel and Zürich, Switzerland which was established in its present form

23  when Union Bank of Switzerland and Swiss Bank Corporation (SBC) merged in 1998.

24     23.   Plaintiffs are unaware of the true names and capacities of defendants sued

25  herein as DOES 1 - 20, inclusive, and therefore sues these defendants by such fictitious

26  names. Plaintiffs will amend this complaint to allege their true names and capacities when

27  ascertained. Plaintiffs are informed and believes and therefore alleges that each of the

28  Complaint

1  fictitiously named defendants is responsible in some manner for the occurrences herein

2  alleged, and that plaintiffs' injuries as herein alleged were proximately caused by such

3  defendants. These fictitiously named defendants are herein referred to collectively as

4  "defendants." These defendants are juridical persons and individuals who are citizens of

5  countries other than the United States.

6       24.   UBS AG and its predecessors SBC and Union Bank of Switzerland

7  encouraged the deposit of cross border funds from the United States and worldwide and

8  actively promoted an atmosphere of banking secrecy in order to attract depositors with

9  sensitive issues and funding including the decedent Adam Malik.

10               V. FACTS PERTAINING TO PLAINTIFF AM TRUST

11       25.   Adam Malik died in 1984; he was one of the most important politicians and

12  revered national heroes in modern day Indonesia and held various high governmental posts

13  including ambassador to Poland and the Soviet Union, Minister of Trade, Foreign Minister

14  and ended his career as Vice President of Indonesia 1978-1983. Adam Malik also was also

15  the 26th President of the UN General Assembly in 1971 and was instrumental in the

16  founding of ASEAN. His involvement at the highest levels of the Indonesian government

17  was unique in that it spanned both the presidencies of Sukarno and Suharto.

18       26.   Prior to his death in 1984, Adam Malik obtained, came in possession or was

19  assigned several bank and safekeeping accounts with Union Bank of Switzerland and SBC

20  in Switzerland and Singapore for his personal use. The accounts contained well over five

21  million dollars in currency and gold bullion.

22       27.   Other accounts at SBC were assigned to Adam Malik by Jusuf Muda Dalam,

23  the former Director of the Indonesian Central Bank.

24       28.   All the accounts and their contents are believed to be in compliance with

25  Indonesian law of that time and were not the proceeds of unlawful activity.

26       29.   In 1985 representatives of the Estate of Adam Malik made a small, partial

27  withdrawal from one or two of the Union Bank of Switzerland Swiss accounts in Zurich in

28

1  the amount of 2.9 million Swiss Francs without incident while the large and complex

2  Adam Malik Estate was being settled.

3       30.  The exact number, nature and location of other SBC and Union Bank of

4  Switzerland accounts in which Adam Malik was the account holder or beneficiary cannot

5  be determined without the cooperation of UBS AG.

6       31.  Since 1985 the Estate of Adam Malik has made continuous efforts to trace the

7  ultimate disposition of other SBC and Union Bank of Switzerland accounts in Switzerland

8  and Singapore as well as access known accounts by hiring attorneys and investigators. The

9  process was complicated at times by the corruption endemic during the Suharto regime in

10  Indonesia.

11       32.  In 1993 the Estate of Adam Malik entered into extensive and detailed

12  correspondence with SBC and its lawyers regarding SBC accounts at the Basel,

13  Breganzona, and Binningen branches that were tied to a Union Bank of Switzerland

14  account in Zurich which was controlled by Adam Malik. SBC's Legal Department

15  eventually admitted that while Adam Malik had dealt directly with Ernst Seidel, Principal

16  Director of Swiss Bank Corporation in Basel, that no further record of the accounts could

17  be located because 10 years had elapsed since the Basel account(s) were presumably

18  closed. SBC conducted only a partial search confined to its Basel branch even though the

19  Estate had also identified Adam Malik accounts at Zurich, Breganzona and Binningen

20  connected to SBC. However, the Estate relying on SBC's false assurance did not realize at

21  the time that SBC itself had converted the proceeds of the accounts and that the records

22  still existed and that the alleged search had not been completed in good faith.

23       33.  In 1997, Christoph Meili, a night bank guard at Union Bank of Switzerland in

24  Zurich, discovered that bank officials were destroying documents about dormant assets,

25  believed to be balances of deceased Jewish clients whose heirs' whereabouts were

26  unknown, as well as books from the German Reichsbank. They listed stock accounts for

27  companies in business during the Holocaust, real-estate records for Berlin property that

28  Complaint

1  had been seized by the Nazis, placed in Swiss accounts, and then claimed to be owned by

2  Union Bank of Switzerland. Destruction of such documents was against Swiss laws. Many

3  of the recovered documents reportedly predated World War II, dating from 1897 to 1927.

4  Prior to this discovery Union Bank of Switzerland had denied information on these

5  accounts existed and cited the same ten year record retention rule as in this case or other

6  denials. In fact Union Bank of Switzerland had converted these assets for its own profit.

7  Meili's whistle blowing eventually led to the filing of class actions lawsuits in New York

8  federal court, a $1.25 settlement by UBS AG and codefendant Credit Suise, several

9  official reports, the release of records and the necessity for the promulgation of the 62 year

10  statute of limitations law on dormant accounts in Switzerland.

11      34.   In 1998, SBC and Union Bank of Switzerland merged to form the defendant

12  UBS AG.

13      35.   In 2006 with newly discovered documentation in hand, representatives of the

14  Estate traveled to Zurich and met with legal representatives of UBS AG. At the request of

15  UBS a quantity of documentation was handed over to UBS officers including information

16  on the merged Malik accounts. UBS AG eventually responded on November 14, 2006 that

17  there was no UBS AG account under the name Adam Malik but admitted Union Bank of

18  Switzerland had an account relationship that was closed in 1985. UBS AG however falsely

19  stated that no records existed because 10 years had elapsed from the date of closure. UBS

20  AG declined to meet with representatives of the Estate.

21      36.   In 2007, the Estate also made fresh inquiries about the UBS account in

22  Singapore and Hong Kong but did not receive a definitive answer from UBS AG despite

23  expending significant sums of money on the effort.

24      37.   Between 2007 and 2013 the Estate made additional attempts through

25  intermediaries and representatives to no avail.

26      38.   In 2009 UBS AG settled a criminal case filed by the US Department of Justice

27  by paying a penalty of $780 million. UBS AG was charged with defrauding the Internal

28  Complaint

1  Revenue Service by facilitating tax evasion by US persons through false reporting and

2  concealment of records.

3      39.   In 2013, the government of Switzerland established a 62 year statute of

4  limitation period for recovery of unclaimed assets including bank accounts and the banks

5  were required to report dormant accounts to the Swiss Banking Ombudsman's Central

6  Claims Office.

7      40.   In 2013, the Estate retained legal counsel Dr. Jonathan Levy Esq. for a final

8  attempt to resolve the outstanding issues with UBS AG.

9      41.   In July 2013, the Estate through its legal counsel undertook a search of its

10  dormant accounts database with the Swiss Banking Ombudsman Central Claims Office

11  after satisfying the Claims Office that the client was the Estate of Adam Malik.

12      42.   On October 31, 2013, the Central Claims Office announced that a search of its

13  centralized database was negative and that no assets connected with Adam Malik had been

14  reported to it as dormant.

15      43.   On December 1, 2013, the Estate filed a claim through its legal counsel with

16  UBS requesting an accounting of certain partially identified accounts.

17      44.   On December 13, 2013, UBS AG responded to the Estate's legal counsel and

18  requested further verifications of its identity which were provided by legal counsel.

19      45.   On March 11, 2014, UBS AG answered the Estate by reaffirming its negative

20  response of November 14, 2006.

21                      **VI. CLASS ALLEGATIONS**

22      46.   This action is brought and may properly be maintained as a class action

23  pursuant to the provisions of Fed. R. Civ. P. 23.

24      47.   CLASS DEFINITION: Plaintiff brings this action pursuant to Federal Rule of

25  Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a class of similarly situated

26  individuals, defined as follows: Secret Bank Account Holders at UBS AG and its

27  predecessors Swiss Banking Corporation (SBC) and Union Bank Switzerland who held

28  Complaint                                                          9

1    an interest in secret bank accounts during the past 62 years (the current Swiss Statute of

2    Limitations for dormant accounts) which were deliberately closed and converted by

3    defendants without consent of the account holders and records destroyed, concealed or

4    withheld under the so called ten year rule when subsequent inquiries were initiated. The

5    class *excludes:* certain beneficiaries of the Swiss Bank Holocaust settlements if their

6    membership in the class is based solely on accounts for which they have already been

7    compensated, all account holders who have previously relinquished or settled their

8    claims, the Judge or Magistrate Judge to who this case is assigned and their families, all

9    class members whose claim is solely based on accounts that have been reported to the

10   Swiss Banking Ombudsman Dormant Account Database and who therefore have a

11   remedy available and all class members who timely exclude themselves.

12        48.   NUMEROSITY: The exact number of the members of the class is unknown and

13   not available to plaintiff at this time, but it is clear that individual joinder is impracticable.

14   On information and belief, there are thousands of persons in the class. Members of the

15   class can be identified through defendants' records and ascertained by reference to

16   objective criteria.

17        49.   COMMONALITY AND PREDOMINANCE: There are many questions of law and

18   fact common to the claims of plaintiff and the members of the putative class, and those

19   questions predominate over any questions that may affect individual members of the

20   class. Common questions for the class include, but are not necessarily limited to, the

21   following:

22        (a)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

23   encouraged an atmosphere of banking secrecy to acquire sensitive funds with little or no

24   documentation generated;

25        (b)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

26   had a practice of flagging certain accounts that were little used, dormant, numbered and

27   where the beneficiary had died or was otherwise disposed;

28   Complaint                                                                              10

1        (c)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

2  engaged in a corrupt practice of closing the flagged accounts and converting the proceeds

3  and profits therefrom to their own use;

4        (d)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

5  when confronted by estates or other claimants to the closed accounts denied their

6  existence;

7        (e)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland,

8  if when confronted by documentation produced by claimants showing the existence of the

9  closed accounts would lie and state that because the account(s) was closed more than 10

10  years ago no records existed but instead would admit a banking relationship had existed

11  to discourage the claimants from making further inquiries;

12        (f)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

13  destroyed account records to avoid reporting accounts as dormant and/or to cover their

14  conversion of funds;

15        (g)   Whether UBS AG and its predecessors SBC and Union Bank of Switzerland

16  has failed to report these accounts as dormant as required by Swiss law to the Swiss

17  Banking Ombudsman's database of dormant accounts;

18        (h)   Whether implied, quasi, or express contracts existed between UBS AG on the

19  one hand, and plaintiff and the members of the putative class on the other;

20        (i)   Whether UBS AG's conduct described herein constitutes unjust enrichment;

21        (j)   Whether UBS AG's conduct described herein constitutes conversion;

22        (k)   Whether UBS AG's conduct described herein constitutes breach of fiduciary

23  duty;

24        (l)   Whether an accounting is appropriate and necessary;

25        (m)   Whether UBS AG is the constructive trustee of funds belonging to plaintiff

26  and the putative class;

27        (n)   Whether defendants' conduct constitutes trespass to chattels; and

28

1        (o)    Whether plaintiff and the putative class are entitled to such further relief

2    requested herein, among other common legal and factual questions.

3        50.    TYPICALITY: Plaintiff's claims are typical of the claims of other members of

4    the class in that plaintiff and the members of the class suffered substantially similar

5    injuries arising out of UBS AG's uniform wrongful conduct.

6        51.    ADEQUATE REPRESENTATION: Plaintiff will fairly and adequately represent

7    and protect the interests of the class, and has retained counsel competent and experienced

8    in complex class actions. Plaintiff has no interest antagonistic to those of the class, and

9    UBS AG has no defenses unique to plaintiff.

10        52.    POLICIES GENERALLY APPLICABLE TO THE CLASS: This class action is

11    appropriate for certification under Rule 23(b)(2) because UBS AG has acted or refused to

12    act on grounds generally applicable to the Class as a whole, thereby requiring the Court's

13    imposition of uniform relief to ensure compatible standards of conduct toward the

14    members of the class and making final equitable relief appropriate with respect to the

15    class as a whole. UBS AG's policies challenged herein apply and affect members of the

16    class uniformly and plaintiff's challenge of these policies hinges on UBS AG's conduct

17    with respect to the class as a whole, not on facts or law applicable only to plaintiff.

18    Specifically, the factual and legal bases of UBS AG's liability to plaintiff and to the other

19    members of the class are the same, resulting in injury to the plaintiff and to all of the

20    other members of the class. Plaintiff and the members of the class have suffered harm and

21    damages as a result of UBS AG's unlawful and wrongful conduct.

22        53.    SUPERIORITY AND MANAGEABILITY: This case is also appropriate for class

23    certification under Rule 23(b)(3) because class proceedings are superior to all other

24    available methods for the fair and efficient adjudication of this controversy because

25    joinder of all parties is impracticable. The damages suffered by some of the individual

26    members of the class will likely be relatively small, especially given the burden and

27    expense of individual prosecution of the complex litigation necessitated by UBS AG's

28

1   actions. Thus, it would be virtually impossible for the individual members of the class to

2   obtain effective relief from UBS AG's misconduct. Even if members of the class could

3   sustain such individual litigation it would still not be preferable to a class action because

4   individual litigation would increase the delay and expense to all parties due to the

5   complex legal and factual controversies presented in this Complaint. By contrast, a class

6   action presents far fewer management difficulties and provides the benefits of single

7   adjudication, economies of scale, and comprehensive supervision by a single Court.

8   Economies of time, effort and expense will be fostered and uniformity of decisions

9   ensured.

10                    **VII. LEGAL AND EQUITABLE TOLLING & ESTOPPEL**

11          54.    No statute of limitations has begun to run on the equitable causes of action

12   stated herein because defendant's misconduct is continuing; defendants have not made any

13   reasonable attempt to disgorge their illicit profits, account for property, return property,

14   acknowledge their wrongdoing or otherwise compensate or make amends to bondholders.

15   Defendant has continued to reap profits as a result of their actions and have refused all

16   requests by plaintiffs for an accounting of the funds in question. Defendant is therefore

17   estopped from interposing any type of time bar defense to these equitable claims.

18          55.    The statute of limitations on dormant bank accounts located in Switzerland is

19   62 years.

20                            **VIII. CAUSES OF ACTION**

21   **FIRST CAUSE OF ACTION - QUASI CONTRACT (UNJUST ENRICHMENT) AGAINST UBS AG**
           **AS THE SUCCESSOR IN INTEREST TO SBC AND UNION BANK OF SWITZERLAND**

22

23          56.    Plaintiffs reallege and incorporate herein, as though fully set forth, the

     allegations of all preceding paragraphs of the Complaint and in particular that as described

24

     herein, defendants have engaged in unlawful, deceptive, and unfair behavior that is

25

     immoral and unscrupulous as to the Account Holders.

26

27          57.    Defendant UBS AG converted to their own use, received, have retained and

     made use of assets wrongfully obtained by Union Bank of Switzerland and SBC as their

28   Complaint                                                                          13

1   successor after the 1998 merger which resulted in the creation of defendant UBS AG,

2   which rightfully belongs to plaintiffs.

3        58.    Defendant UBS AG denies that any relationship existed between it and

4   plaintiff but has admitted through its attorneys said contractual depositor relationships

5   existed such as the one between Adam Malik and SBC and Union Bank of Switzerland but

6   falsely asserts that records no longer exist.

7        59.    Defendants have failed to account for and/or pay to plaintiff and the class the

8   value of their property and profits derived therefrom.

9        60.    As a result of defendant's wrongful acts and omissions, defendant has been

10  unjustly enriched to the detriment of plaintiff and the class.

11       61.    Plaintiff and class therefore demand compensation for actual damages,

12  disgorgement of profits, interest and judgment against defendants in an amount to be

13  determined at trial, together with interest, attorneys' fees, and the costs of this action.

14  SECOND CAUSE OF ACTION - ACCOUNTING AGAINST UBS AG AS THE SUCCESSOR IN

15          INTEREST TO SBC AND UNION BANK OF SWITZERLAND

16       62.    Plaintiffs reallege and incorporate herein, as though fully set forth, the

17  allegations of all preceding paragraphs of the Complaint.

18       63.    Defendants has never accounted for or paid the value of plaintiffs' property

19  or the profits which defendants have derived from that property.

20       64.    As a result of the value of their property having been taken from them,

21  against their will and without just payment by defendants, plaintiffs have been unable to

22  use or invest those assets and are lacking information about the value of their accounts.

23       65.    Defendant has had actual and constructive notice of past demands for an

24  accounting and refuses to conduct an accounting of records in its possession or knowledge.

25       66.    As a result of defendant's aforesaid wrongful acts and omissions, plaintiffs

26  have been injured and damaged and demand the equitable remedy of accounting to

27  determine value of their property and the profits derived therefrom in order to obtain

28  Complaint                                                              14

1   adequate compensation from defendant.

2                   **THIRD CAUSE OF ACTION – RESTITUTION**

3       67.   Plaintiffs reallege and incorporate herein, as though fully set forth, the

4   allegations of all preceding paragraphs of the Complaint.

5       68.   Plaintiffs' assets have been taken, thus denying plaintiffs the use and

6   enjoyment thereof; defendants have wrongfully used and profited from that property; and

7   compensation in damages is inadequate in that the property taken cannot be replaced and

8   the harm inflicted cannot be undone by mere compensation.

9       69.   As a result of defendant's wrongful and unethical acts and omissions,

10  plaintiffs have been injured and damaged and demand equitable remedies including an

11  order for restitution as an alternative to quasi contractual damages.

12              **FOURTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY**

13      70.   Plaintiffs reallege and incorporate herein, as though fully set forth, the

14  allegations of all preceding paragraphs of the Complaint.

15      71.   As guardians of the plaintiff's and the classes' accounts, defendants owed a

16  fiduciary duty to plaintiff and the class to protect their accounts and maintain complete and

17  accurate records. Defendants likewise owed a fiduciary duty to plaintiff and the class to

18  allow access to their accounts.

19      72.   Defendant breached its fiduciary duty to the Plaintiff and the Classes by:

20  (a) failing to adequately safeguard and safe keep plaintiff and the class' accounts, and

21  (b) to maintain adequate records in the event the account became dormant or disused due

22  the account holder's death, incapacity, or absence. UBS AG did not honor any of these

23  obligations.

24      73.   As a result of these breaches plaintiff and the class have the lost the value of

25  their accounts with UBS AG.

26      74.   Plaintiff and the class therefore seek an order requiring UBS AG to make full

27  restitution of all funds wrongfully obtained, held or lost, and (ii) awarding punitive

28  Complaint

1  damages, costs, and reasonable attorneys' fees to plaintiff and the class.

2                    FIFTH CAUSE OF ACTION - CONVERSION

3        75.  Plaintiffs reallege and incorporate herein, as though fully set forth, the

4  allegations of all preceding paragraphs of the Complaint.

5        76.  Plaintiffs and the class deposited cash, gold and other valuables with

6  defendant UBS AG, SBC, and Union Bank of Switzerland.

7        77.  Defendants intentionally and without authorization or consent gained accessed

8  to Plaintiff and the class' accounts, used plaintiff's and the class' assets, exercised control,

9  dominion or ownership of plaintiff's and the class' asset and/or dispossessed of plaintiff

10  and the class of their assets.

11        78.  As a result of defendant's interference with their accounts, the plaintiff and

12  the class have suffered, and will continue to suffer, damages due to loss of their assets that

13  were on deposit.

14        79.  Therefore plaintiff and the class seek an order requiring UBS AG to

15  immediately make restitution of all funds wrongfully obtained and to pay for attorney fees

16  and the costs of this lawsuit.

17                  SIXTH CAUSE OF ACTION – CONSTRUCTIVE TRUST

18        80.  Plaintiffs reallege and incorporate herein, as though fully set forth, the

19  allegations of all preceding paragraphs of the Complaint.

20        81.  Plaintiff and the class deposited funds and other assets with defendants in

21  good faith that they would be safeguarded and safe kept.

22        82.  Defendants appreciated or had knowledge of the benefits conferred upon it

23  by plaintiff and the class.

24        83.  Defendant with consent of plaintiff and the class closed the accounts in

25  which the assets were deposited. As a result, plaintiff and the class cannot access,

26  withdraw, or cash out their accounts.

27        84.  As a result, and with respect to plaintiff's claims for equitable relief

28  Complaint                                                                    16

1  described herein, each of which is made in the alternative to plaintiff's claims for money

2  damages, plaintiff and the class seek the imposition of a constructive trust on all of their

3  assets within UBS AG's possession, custody, or control. These assets are the property of

4  the members of the class and they have an equitable interest in such property.

5       85.   UBS AG intentionally and without authorization or consent, gained

6  possession, custody or control of plaintiff's and the class' assets and have denied plaintiff

7  and the members of the class the ability to access their property.

8       86.   The imposition of a constructive trust on plaintiff's and the class' assets is

9  warranted given UBS AG's unlawful conduct described above.

10      87.   Plaintiff and the members of the class have no other adequate remedy at law.

11      88.   Plaintiff and the members of the class are likely to suffer irreparable harm as

12  they have no alternative means for accessing their assets and UBS AG has no intention of

13  voluntarily returning these assets.

14      89.   Plaintiff seeks an order (i) imposing a constructive trust over the assets

15  currently held by UBS AG and belonging to the Plaintiff and the members of the class,

16  and (ii) appointing UBS AG as trustee of the constructive trust for the sole purpose of

17  returning the assets to all of the members of the class and awarding plaintiff costs for the

18  lawsuit.

19                SEVENTH CAUSE OF ACTION – TRESPASS TO CHATTEL

20      90.   Plaintiffs reallege and incorporate herein, as though fully set forth, the

21  allegations of all preceding paragraphs of the Complaint.

22      91.   Plaintiff and the class transferred, maintained, and stored assets with UBS

23  AG and its predecessors Union Bank of Switzerland and SBC.

24      92.   Plaintiff's and the class' assets included protected property interests.

25      93.   UBS AG and its predecessors Union Bank of Switzerland and SBC

26  intentionally and without authorization or consent, gained accessed to Plaintiff's and the

27  class's assets on deposit, used the assets, exercised control, dominion or ownership of

28  Complaint

1    Plaintiff's and the class' assets, and/or dispossessed of Plaintiff and class of their assets.

2         94.    In doing so, Defendants intentionally and/or negligently intermeddled with,

3    damaged, and/or deprived Plaintiff and the other members of the Frozen Currency Class

4    of the use of their bitcoins and Fiat Currency.

5         95.    As a result of Defendants interference with Plaintiff's and the other class' use

6    of their accounts, Plaintiff and the other members of the class have suffered, and will

7    continue to suffer, damages.

8         96.    Accordingly, Plaintiff seeks an order requiring UBS AG to pay damages and

9    immediately make full restitution of all funds wrongfully obtained, and awarding Plaintiff

10   costs of the lawsuit.

11                         **IX. PRAYER FOR RELIEF**

12   WHEREFORE, Plaintiff prays for judgment against each defendant as follows:

13   A.    for compensatory damages including accrued interest;

14   B.    for an accounting;

15   C.    for disgorgement of profits and restitution;

16   D.    for costs of suit, including attorneys' fees;

17   E.    for punitive damages;

18   F.    for imposition of a constructive trust;

19   F.    and for such other and further relief as the Court deems appropriate.

20                              **JURY DEMAND**

21   Plaintiff requests a trial by jury.

22   DATED: September 12, 2014.

23                     By AM TRUST, individually and on behalf of all others similarly situated,

24                                                    */s/ Thomas Easton*
                                              By: THOMAS EASTON
25                                               Plaintiff's Attorney

26                                              _____

27

28   Complaint